UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 1:08-cr-74 |
| | § | |
| | § | Judge Collier/Carter |
| DOUGLAS CHASTAIN | § | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Douglas Chastain's Motion to Suppress (Doc. 18) is pending before the undersigned Magistrate Judge having been referred by the District Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Defendant seeks to suppress evidence found during a search of his residence on May 29, 2008, pursuant to a search warrant. Defendant also requests an evidentiary hearing "allowing Defendant to challenge the validity of the search warrant..." (Doc. 18, p. 1). For the reasons set forth, the undersigned Magistrate Judge RECOMMENDS Defendant's motion to suppress be DENIED.

II. Relevant Facts

Special Agent Warren Smith with Alcohol, Tobacco and Firearms, swore to the Search Warrant Affidavit. Agent Smith notes he was participating in a joint Federal investigation of a firearms violation in Bradley county, Tennessee (Search Warrant, p. 1). Agent Smith submits in the affidavit "that probable cause exists to believe that Doug Chastain has been in possession of

1

numerous firearms and ammunition, and is using the residence located at 1013 Dockery Lane, Cleveland, Tennessee, to store firearms and ammunitions (sic)" (Search Warrant, p. 2). The Affidavit then provides in pertinent part:

> 9. On May 28, 2008, the Bradley County Sheriff's Department ("BCSD"), was investigating the death of an individual. As part of this investigation, Sheriff's detectives were interviewing Doug Chastain, a potential witness in the shooting incident at his residence. Chastain was already seated at a table when the detectives entered the residence. Chastain kept one hand continuously under the table. During the course of the interview, Chastain asked Detective David Shoemaker if he had a weapon. Detective Shoemaker replied that he did, and asked if Chastain also had a weapon. Chastain stated: "so do I, and I'm a convicted felon". Detective Shoemaker asked if Chastain was going to pull the weapon on him. Chastain said that he probably wouldn't, however, he refused to bring both hands on top of the table. At this point, Detective Shoemaker ended the interview and left the residence, believing that Chastain had a handgun under the table.
> 10. On May 29, 2008, Chastain called Emergency Medical Services (EMS) requesting medical attention at his residence. Chastain was complaining of chest pains. The EMS arrived at his residence along with BCSD deputies. While attempting to move Chastain to provide medical care, the EMS technicians and Sheriff's deputies saw several shotgun shells laying on the floor of the residence.
> 11. Affiant has reviewed the criminal history of Doug Chastain, a white male, born on November 10, 1957, and is aware that Chastain has a criminal history that shows he is a convicted felon and thus is prohibited from possessing a firearm. Chastain has been convicted of several felony offenses including Robbery, Burglary, and Sale of a controlled substance. (Search Warrant Affidavit, p. 3, 4).

The Government asserts a search of Chastain's residence began soon after the warrant was signed and a firearm and ammunition were found in Chastain's home. In a one count indictment, Defendant was charged with being in possession of ammunition as a convicted felon in violation of Title 18, United States Code § 922 (g) (Doc. 1).

2

III. Analysis

Defendant has moved to suppress this search arguing, *inter alia*, that (1) the affidavit does not contain sufficient facts for a finding of probable cause; (2) the search of the residence began before counsel believes the signed search warrant could have traveled to the defendant's house; and (3) there was no copy of the search warrant provided to defendant. His second argument is based on photographs taken from inside the premises less than one hour after the issuance of the warrant. The United States in response asserts there is sufficient probable cause, the second argument fails because the search occurred after it was authorized, and finally the remedy of suppression is not required even if defendant did not receive a copy of the warrant.

*The Franks Issue:*

As a preliminary matter, I will address the issue of whether an evidentiary hearing is necessary. Defendant asks for a hearing to allow him to challenge the validity of the search warrant but does not support such request with affidavits and does not articulate why such a hearing is needed. As set out below, I conclude Defendant has not made the proper showing to necessitate a *Franks* hearing, and agree with the Government that no evidentiary hearing is necessary.

*Franks v. Delaware*, 438 U.S. 154, 171 (1978) established the procedure by which a defendant could seek the suppression of evidence by challenging the veracity of statements made by an affiant in order to secure a search warrant. "Counsel can attack the validity of a search warrant by alleging that the affidavit contains deliberately false statements." *United States v. Hill*, 142 F.3d 305, 309 (6th Cir. 1998) (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)). To do so requires an evidentiary hearing during which defendants are allowed to present

3

evidence concerning the veracity of the challenged statements in the search warrant affidavit. *United States v. Keszthelyi,* 308 F.3d 557, 566-68 (6th Cir. 2002); *United States v. Jenkins*, 728 F.2d 396, 397 (6th Cir. 1984). "In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." *Franks,* 438 U.S. at 155-56; *see also Keszthelyi,* 308 F.3d at 566. In order to obtain such a hearing, the defendant must meet a two-pronged test. First, a defendant must make a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false. *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001), *cert. denied*, 122 S.Ct. 1625 (2002); *Hill*, 142 F.3d at 310. "[T]he challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. 154, 171. Second, the court must find that the challenged statements are necessary to a finding of probable cause. *Id*.

In his Motion to Suppress, Defendant does not appear to be directly challenging the truthfulness of the affiant. The search warrant return, sworn to before the United States Magistrate Judge on May 30, 2008, reflects the execution of the warrant to have been on May 29, 2008 at 17:30 hours, several hours after it was issued. *Franks* does not provide for a hearing to conduct a fishing expedition on the credibility of an affiant. Because the defendant has not made

4

a substantial preliminary showing, in the form of an affidavit or otherwise, of reckless or deliberate disregard for the truth on the part of Special Agent Smith who prepared the affidavit to secure the search warrant, defendant is not entitled to an evidentiary hearing.

    *1. Probable Cause*

    The Fourth Amendment provides "no warrant shall issue but upon probable cause, supported by oath or affirmation...." *U.S. Const. amend IV.* To establish probable cause to justify a search warrant, an affidavit must set forth facts which indicate "a fair probability exists that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal citations omitted); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005). The Court must consider the totality of the circumstances as set out in the four corners of the affidavit. *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (totality of the circumstances standard); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971) (Court limited to review of affidavit itself); *Frazier*, 423 F.3d at 531. Where an affidavit relies upon hearsay information from a confidential informant to supply probable cause, "a court must consider the veracity, reliability, and the basis of knowledge of that information as part of the totality of the circumstances for evaluating the impact of the information." *Frazier*, 423 F.3d at 532 (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)). Independent police corroboration of a confidential informant's story is not necessarily required to support probable cause, but where the affidavit lacks indicia of the informant's reliability, "courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532; *see also*, *United States v. McCraven*, 401 F.3d 693, 698 (6th Cir. 2005); *United States v.*

5

*Woosley,* 361 F.3d 924, 927 (6th Cir. 2004); *United States v. Allen,* 211 F.3d 970, 976 (6th Cir.) (en banc), *cert. denied*, 531 U.S. 907 (2000).

A warrant must be upheld "so long as the magistrate had a substantial basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing . . ." *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). A magistrate's probable cause determination should be made in "realistic and common sense fashion," and reviewed in the same manner. *United States v. Finch*, 998 F.2d 349 351 (6th Cir. 1993) (further citations omitted).

The Sixth Circuit in *United States v. Shamaeizadeh*, 80 F.3d 1131, 1136 (6th Cir. 1996) described the application of the *Gates* test:

> In applying its "totality of the circumstances" test, the *Gates* court identified three factors in determining whether probable cause existed: 1) the basis of the informant's knowledge; 2) the reliability of the informant; and 3) the corroborative evidence presented by the government. *Gates*, 462 U.S. at 230-32, 245, 103 S.Ct. at 2328-29, 2335-36; *Leake*, 998 F.2d at 1363. The *Gates* court noted that these factors are not to be analyzed as "separate and independent requirements to be rigidly exacted in every case." *Gates*, 462 U.S. at 230, 103 S.Ct. at 2328. Rather, the reviewing court is to weigh them together in determining whether they form a substantial basis for finding probable cause. *Id.* The strength of one or more of these factors may compensate for the deficiencies of another factor. *Gates*, 462 U.S. at 233-34, 103 S.Ct. at 2329-30.

(Internal footnote omitted), *see also United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999).

Here the affidavit includes a statement by the Defendant to a Sheriff's detective who was conducting an investigatory interview. This occurred one day before the issuance of the warrant. During the interview Defendant asked Detective Shoemaker if he had a weapon. Shoemaker replied that he did, and asked if Chastain also had a weapon. Chastain stated: "so do I, and I'm a convicted felon" (Search Warrant Affidavit, p. 3). Because Chastain kept his hands below the

table, detective Shoemaker ended the interview, believing Chastain had a handgun. I conclude it is reasonable for the detective to suspect the presence of a firearm under those circumstances. Although Defendant argues a weapon could have been a knife, I conclude it is more reasonable to believe he was referring to a firearm since Sheriff's detectives are issued firearms, not knives. It is more reasonable to conclude this discussion about weapons related to a firearm rather than a knife. In addition, the facts set out in the affidavit assert a Bradley County Sheriff's deputy and EMS technicians saw shotgun shells in the living room of the defendant's residence while they provided assistance to Chastain who was complaining of chest pains. They were in Chastain's residence at his request for medical attention. As a prohibited person, it is illegal for the defendant to possess shotgun shells or any other kind of ammunition.

As the Government argues, one can establish probable cause that evidence of a crime will be found in a particular place from the fact that a law enforcement officer saw such evidence in the place to be searched. It was the same day, so there can be no question that the probable cause was not stale.

The defendant argues that the sheriff deputy's presence was pretextual. However, the Supreme Court has "flatly dismissed the idea that an ulterior motive might serve to strip the agents of their legal justification." *Whren v. United States*, 517 U.S. 806, 813 (1996), *see also Arkansas v. Sullivan*, 532 US 769 (2001). "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren*, 517 U.S. at 813. In addition, it was not only the police who entered Defendant's residence. EMS technicians responded to the call and saw several shotgun shells laying on the floor. Clearly, looking at the totality of the circumstances set forth in the affidavit, there is probable cause based on these facts.

7

*2. The timing of the search.*

The defendant next argues that the actual search of the residence began prior to the execution of the search warrant. The defendant bases this argument on the time shown on a clock in a photograph taken in the residence during the search. The wall clock indicated 4:23 p.m. As the Government argues, there is no way to verify that the clock reflected the accurate time. The defendant's argument is further premised on an estimate of the travel time between the federal courthouse and the defendant's residence. This estimate is, at best, a guess, as the Government argues. Even taking the arguments of Defendant as true, the sworn warrant and sworn return clearly show the search began after the warrant was signed. Defendant does not contend otherwise. The search warrant was signed by the United States Magistrate Judge on May 29, 2008 at 3:45 p.m. The return is dated showing the warrant was executed May 29, 2008 at 17:30 hours or 5:30 p.m. Defendant cites no statute or case law that requires a certain amount of time to lapse *before* the search is executed. To the contrary, a warrant must be executed within ten days, and during the daytime, unless there is good cause to authorize another time. Criminal Procedure Rule 41(2)(A). Defendant cites no authority to support his position. Because the search was conducted after the issuance of the warrant, there appears to be no merit to Defendant's argument on this issue.

*3. Failure to Leave the Search Warrant at the Premises*

The defendant also seeks suppression because the officers allegedly failed to leave a copy of the search warrant at the premises. The defendant argues that under Tennessee state law, the evidence must be suppressed because of the failure to leave a copy of the warrant. The argument by the defendant that the warrant must comport with the *Tennessee Constitution* or state statutory

8

requirements is incorrect. It is well settled in our Circuit that federal law governs federal proceedings. *United States v. Bennett*, 170 F.3d 632, 635 (6th Cir. 1999). In the instant case, federal officers were involved in the process of seeking the approval for the search warrant, the actual signing of the affidavit, and the search. The act of leaving the copy of the warrant, while required by both the Federal and Tennessee state rules of criminal procedure, is not a violation of the Fourth Amendment and therefore suppression is not mandated.

Here the defendant argues that he had not received a copy of the return, or inventory, of the property seized and generally has no information about the items seized (Doc. 18, p. 2). The Government argues the defendant was not at his residence at the time of the execution of the search warrant. He had been taken by emergency medical services to the hospital before the officers arrived with the warrant.

Nevertheless, even assuming *arguendo* that a copy of the warrant was not left at the residence, suppression of the evidence would not be required under the Federal Rules of Criminal Procedure. Leaving a search warrant at the premises to be searched is required by Rule 41(d) of the Federal Rules of Criminal Procedure. A technical violation of Fed. R. Crim. P. 41 does not automatically require suppression of evidence. *United States v. $22,287.00 United States Currency*, 709 F.2d 442 (6th Cir. 1983). In *$22,287.00 United States Currency,* the Sixth Circuit ruled that numerous technical violations of Rule 41 in the warrant did not require suppression.[1] The Court noted that there was no prejudice to defendant, the search was not "abrasive," and

---

[1] Those violations included: search warrant which was not directed to a civil officer of the United States, possibly executed in the nighttime, contained no ten-day limitation, and failed to designate a federal magistrate to whom it should be returned. *Id.* at 447-49.

9

there was no evidence of intentional or deliberate disregard for the provisions of the Rule. *Id*. at 448-49.

Moreover, in *Frisby v. United States*, 79 F.3d 29 (6th Cir. 1996), the Sixth Circuit held that an inadvertent failure to serve a part of the search warrant at the time the search was executed was a technical violation of Rule 41(d) that did not require suppression of the evidence. The Court stated:

> [W]e have held that although the procedural steps enumerated in Rule 41(d) are important and should not be disregarded, they are ministerial and "[a]bsent a showing of prejudice, irregularities in these procedures do not void an otherwise valid search."

*Id*. at 32, *citing United States v. McKenzie*, 446 F.2d 949, 954 (6th Cir. 1971). Other cases have held the failure to leave a warrant at the premises does not mandate suppression. *United States v. Marx*, 635 F.2d 436, 411 (5th Cir. 1981); *United States v. Gross*, 137 F. Supp. 244 (D.C.N.Y. 1956). Here, there has been no showing of prejudice stemming from the alleged failure to leave a copy of the warrant. The search warrant including the return has been provided to counsel for Defendant. No prejudice has been asserted; thus, suppression is not warranted.

## IV. Conclusion

When considering the information presented in Special Agent Smith's affidavit as a whole, I conclude the affidavit sets forth probable cause to issue the search warrant for the Defendant's residence. Defendant has not made a substantial preliminary showing of a reckless or intentional disregard for the truth on the part of Special Agent Smith in his affidavit to merit

10

an evidentiary hearing on Defendant's motion to suppress. Therefore, it is RECOMMENDED that Defendant's motion to suppress (Doc. 18) be DENIED.[2]

Dated: October 27, 2008        s/William B. Mitchell Carter
                               UNITED STATES MAGISTRATE JUDGE

---

[2] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S.Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).